IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

Gaylor, Inc.                          :
                                      :
         Plaintiff,                   :
                                      :
v.                                    :
                                      :
James A. Goodenow,                    :
et al.                                :
                                      :
         Defendants.                  :

### AFFIDAVIT OF DONALD STAFFORD

STATE OF OHIO        )
                     )   SS.
COUNTY OF FRANKLIN   )

    COMES NOW Affiant, Donald Stafford, being duly sworn and cautioned, and assuring his competency to testify to the matters stated below based on personal knowledge, states as follows:

    1.    My name is Donald Stafford and I am the Vice President of the Dublin, Ohio branch of Gaylor, Inc. ("Gaylor"), an electrical contractor located at 4150 Tuller Rd., Suite 230, Dublin, Franklin County, Ohio 43017. I am at least eighteen years of age.

    2.    Franklin County is constructing a new animal shelter and adoption center ("the Project").

    3.    The Franklin County Board of Commissioners Department of Public Facilities Management (the "County") issued an invitation to bid for the electrical systems package on the Project. At section 8.2.4, the Invitation to Bid and Contract Documents (the "Contract") mandates that the Construction Manager obtain information from the lowest responsive Bidder

1



that the Project Manager uses to evaluate the bid. A true and accurate copy of sections 8.2 and 8.3 of the Contract are attached hereto as Exhibit 1.

4. Although section 8.2.4. of the Contract lists twenty-five "factors" for the County to consider when deciding whether a low bidder's bid is best, the County's policy is to first evaluate information relevant to section 8.2.4.15:

> Information that the Bidder has not been debarred from public contracts or found by the state (after all appeals) to have violated prevailing wage laws more than three times in a two-year period in the last ten years.

(Exh. 1 at 8.2.4.15).

5. This "factor" is dispositive. Respondent Myers stated in the protest meeting (relevant portions of the transcript of the protest meeting are attached hereto as Exhibit 2), that it is the policy of the County to first make a determination as to whether there has been a prevailing wage violation, and if it finds that there has been, it stops its review and does no further analysis as to whether the lowest bidders bid is best. (Exh. 2 at 15:13-18; 16:9-15).

6. On November 23, 2009, Gaylor submitted the lowest bid for the Project's electrical systems package.

7. On December 28, 2009, the County sent a letter to Gaylor stating that its bid was rejected, citing Section 8.2.4.15 of the Contract and stating that based on its review of the records on file with the Ohio Department of Commerce ("Commerce"), Gaylor had been found to have violated prevailing wage law. A true and accurate copy of the County's December 28, 2009 letter is attached hereto as Exhibit 3.

8. Commerce has never found that Gaylor violated prevailing wage law, has never issued a finding that Gaylor violated prevailing wage law, has never notified Gaylor that it violated prevailing wage law, and has never debarred Gaylor for any alleged violation.

9. The County's determination that Gaylor violated prevailing wage law was based on its own review and investigation of Commerce records. It is the first and only finding that Gaylor violated Ohio prevailing wage law. The power to issue such a finding or determination is expressly reserved for Commerce and the courts.

10. On or about December 30, 2009, Gaylor objected to the County's rejection of its bid and requested a "Protest Meeting," under section 8.3.1.1 of the Contract, to provide additional information and argument. A true and accurate copy of Gaylor's December 30, 2009 letter is attached hereto as Exhibit 4.

11. At the Protest Meeting on January 14, 2010, Gaylor establishing that it had never been found by the State to have violated prevailing wage law. The meeting was held before the same individuals who made the initial illegal and unjustified finding that Gaylor had violated prevailing wage law. We did not have an impartial fact finding, nor were we able to present evidence or argument in any meaningful way. (See Exh. 2.)

12. On February 9, 2010, the County affirmed its previous finding, reasserting that Gaylor had violated prevailing wage law, and rejected Gaylor's low bid. The County's February 9, 2010 letter affirming its prior finding is attached hereto as Exhibit 5.

13. To the best of my knowledge, Ohio's prevailing wage law does not provide authority to the County to issue findings, hold hearings, or make decisions or determinations of violations.

14. All of Gaylor's alleged "violations" of Ohio's prevailing wage law were in fact unintentional underpayments.

15. Without a hearing, the presentation of evidence and argument, and additional fact finding, Commerce's decision is not an adjudication or a finding of a "violation."

16. In an earlier case Commerce judicially admitted that it neither adjudicates nor issues adjudicated findings of unintentional prevailing wage violations. A true and accurate copy of the Answer of Kimberly A. Zurz, the director of the Ohio Department of Commerce, to the Associated Builders & Contractors of Central Ohio, et al.'s Complaint, filed in Supreme Court Case No. 2008-1923, is attached hereto as Exhibit 6. (See Exh. 6 at ¶ 67-68).

17. Although Commerce has received complaints of underpayments by Gaylor, and it has issued decisions recommending Gaylor make restitution, neither Commerce nor a court of law has ever found Gaylor guilty of a "violation" of Ohio's prevailing wage law.

18. Gaylor elected to settle each of the claims brought against it. Gaylor included the following statement with almost all of its settlement payments:

> By entering into this settlement, Gaylor Group, Inc. admits no liability or wrongdoing whatsoever in connection with this or any other project, and expressly reserve the right to raise any and all possible claims and defenses on its behalf in connection with any other audit or project.

Two payments were inadvertently made without the foregoing statement. True and accurate copies of the letters sent to Commerce that included the above statement are attached hereto as Exhibit 7.

19. The County requested and obtained from Commerce its records of investigations and recommendations regarding Gaylor. (See Exh. 3.)

20. While neither Commerce nor any court has ever issued a finding that Gaylor violated the Statute, the County issued its own finding that Gaylor had in fact violated the Statute. In so doing, the County elevated unintentional underpayments to the status of a violation, without first giving notice, providing a hearing, or affording any meaningful due process.

21. In the case of an unintentional underpayment, the investigation and recommendation records maintained by Commerce are not sufficient for a finding and are not evidence that a contractor has actually "violated" Ohio's prevailing wage law.

22. The first time Gaylor has ever been found to have violated Ohio's prevailing wage law, was by the County upon the County's interpretation of the materials provided by Commerce.

23. The first time Gaylor had ever been notified that it had been found to have violated the Statute, was by the County upon the County's rejection of Gaylor's low bid.

24. The first and only time Gaylor has ever been debarred from public contracting is by the County, based on the County's own finding that Gaylor had violated the Statute.

25. If Gaylor had known that the County would use Gaylor's prior settlement of claims, and the records held by Commerce, to make its own independent finding that Gaylor had violated the Statute it would not have settled the disputes, and in fact would have required either Department or a court to actually issue a finding as to whether a violation had occurred.

26. Moreover, if either Commerce or a court had actually found a violation, Gaylor would have been entitled to and would have appealed any such finding or decision.

27. Gaylor's reputation will be significantly impacted as a result of the County's finding that Gaylor violated prevailing wage law and Gaylor's bids will not be considered fully and fairly by the County due to the County's debarment of Gaylor. Debarment for prevailing wage violations is a serious stigma, and the County's debarment of Gaylor severely impairs Gaylor's standing in the community of public contractors.

28. In the protest meeting Gaylor was not afforded an opportunity to cross-examine adverse witnesses, there were no written rules, there was no burden of proof, and no meaningful

opportunity to rebut the records of Commerce, which were incorrectly interpreted and deemed conclusive and unimpeachable. Moreover, prior to the protest meeting Gaylor was not given an opportunity to conduct discovery or issue subpoenas. The Defendants responsible for making and issuing the County's finding had no knowledge or expertise on prevailing wage issues or Ohio's prevailing wage law.

29. Gaylor had no advance notice that it was being accused of prevailing wage violations.

30. Gaylor was afforded no process before Commerce issued its preliminary decision and had no right to appeal the decision and afforded no process before the County issued its finding that Gaylor violated prevailing wage law, rejected Gaylor's bid and debarred Gaylor.

31. Upon my own investigation, I discovered the lead or general contractor portion of the Project has not yet been awarded by the County. It is impossible for the project to move forward before this contract is awarded. As a result, any act that preserves the status quo on the project will not cause harm to any interested party.

32. On April 9, 2002, the County adopted Resolution No. 421-02 whereby the Board of Commissioners decided to include the language contained in section 8.2.4.15 in every invitation to bid where prevailing wage regulations apply. A true and accurate copy of Resolution No. 421-02 is attached hereto as Exhibit 8.

FURTHER AFFIANT SAYETH NAUGHT

_____
Donald Stafford

Sworn and subscribed to before me this _____ day of February, 2010.

_____ My Commission expires on: __No exp__
Notary Public                                                          Date

Kenley S. Maddux, Attorney At Law
NOTARY PUBLIC - STATE OF OHIO
My commission has no expiration date
Sec. 147.03 R.C.

7