IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GAYLOR, INC.,

        Plaintiff,                                         CASE NO.: 2:10cv183
                                                               JUDGE GREGORY L. FROST
        v.                                               Magistrate Judge Norah McCann King

FRANKLIN COUNTY BOARD
OF COMMISSIONERS, et al.,

        Defendants.

**OPINION AND ORDER**

        This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Plaintiff's Motion for Injunctive Relief Against the County Defendants") (Doc. # 4) and the Memorandum Contra Plaintiff's Motion for Injunctive Relief of Defendants the Franklin County Board of Commissioners ("Board"), Board Director James A. Goodenow, Board Assistant Director Richard E. Myers, Board Project Manager Wayne King, Board President John O'Grady, Board Member Paula Brooks, and Board Member Marilyn Brown (together "County Defendants"). (Doc. # 11). For the reasons that follow, the Court **DENIES** Plaintiff's motion.

**I. Background**

        This action stems from a competitive bidding dispute regarding a bid for a contract for a public project. Plaintiff, Gaylor, Inc., submitted a bid for the electrical systems package on the Franklin County Animal Shelter. On December 28, 2009, Richard E. Myers, Assistant Director of Franklin County Public Facilities Management, notified Plaintiff that it had been "found by the State of Ohio to have violated the State's prevailing wage laws more than three times in a

1

two-year period within the last ten years." (Doc. # 2-2.) Based on the information contained in this record, the Board rejected Plaintiff's bid for failure to satisfy section 8.2.4.15 of the bid selection criteria. The bid selection criteria are set forth in the Board's resolution 421-02, which was adopted in 2002.

On December 30, 2009, Plaintiff delivered a written protest to Myers. On January 14, 2010, the Board afforded Plaintiff a protest meeting to review the disqualification. On February 9, 2010, the Board notified Plaintiff that it denied his protest and that Plaintiff was disqualified from the pool of bidders for the Animal Shelter project.

On February 22, 2010, Plaintiff filed an original action with the Ohio Supreme Court, *State ex rel. Gaylor, Inc. v. Goodenow*, No. 2010-0330, in which it sought an emergency stay of the electrical work until that court could rule on whether the Board possessed jurisdiction under state law to make a finding that a contractor had violated prevailing wage law.

On February 23, 2010, the Board awarded the Animal Shelter electrical contract to Jess Howard Electric, a company that submitted a higher dollar amount bid than Plaintiff's. The Board found the Jess Howard Electric bid to be the lowest and best.

On February 26, 2010, Plaintiff filed the instant action "to enforce its federal constitutional rights to not be wrongfully labeled a 'violator' under Ohio law without due process of law." (Doc. # 4 at 4.) In its complaint, Plaintiff seeks a temporary restraining order and preliminary and permanent injunctive relief regarding the Board's consideration of Plaintiff's bid and the Board's decision to award the contract to another contractor.

Also on February 26, 2010, Plaintiff filed before this Court a motion for a temporary restraining order in which it requests "temporary injunctive relief immediately stopping all

construction activities on the electrical contract portion of the" Animal Shelter project. (Doc. # 4 at 1.) On March 1, 2010, the Court held a conference on the motion for temporary injunctive relief pursuant to Southern District of Ohio Civil Rule 65.1. (Doc. # 6.) As a result, the Court scheduled a hearing on Plaintiff's motion for a temporary restraining order for March 8, 2010, at 5:30 p.m. and ordered the County Defendants to file their memorandum in opposition to Plaintiff's motion by March 5, 2010, at 12:00 p.m. (Doc. # 7.)

On March 3, 2010, the County Defendants filed a motion to dismiss based upon abstention. (Doc. # 8.)

On March 4, 2010, Plaintiff filed an amended complaint adding the Ohio Department of Commerce ("Commerce") and Commerce Director Kimberly A. Zurz as party defendants (together "Commere Defendants"). The amended complaint seeks injunctive and declaratory relief from the Commerce Defendants. Additionally, the amended complaint added a request for a declaratory judgment related to the legality of the Board's actions. (Doc. # 9.)

On March 5, 2010, Plaintiff filed a motion for a temporary restraining order against the Commerce Defendants ("Plaintiff's Motion for Injunctive Relief Against the Commerce Defendants"). (Doc. # 12.) The Commerce Defendants agreed participate in the March 8, 2010 hearing scheduled on Plaintiff's Motion for Injunctive Relief Against the County Defendants.

On March 7, 2010, the Commerce Defendants filed a motion to dismiss (Doc. # 16), which was opposed by Plaintiff the following day (Doc. # 19). Also on March 7, 2010, this Court denied the County Defendants' motion to dismiss.[1] (Doc. # 17.)

---

[1] During oral argument at the preliminary injunction hearing, Plaintiff's counsel indicated that the issues before this Court have been in the Ohio courts for some time, at the trial and appellate court levels, and that the instant action was filed because Plaintiff was not receiving the

On March 8, 2010, the Commerce Defendants filed a second dispositive motion, this one requesting dismissal or in the alternative summary judgment. (Doc. # 20.) Additionally, on March 8, 2010, the Court held the scheduled hearing on Plaintiff's motions for injunctive relief. Plaintiff and counsel for Plaintiff, the County Defendants, and the Commerce Defendants attended the hearing. The Court heard oral argument from all parties and also accepted argument from a potential intervening party, Jess Howard Electric.

## II. Standard

The Sixth Circuit Court of Appeals has explained the inquiry involved in addressing a motion for either a temporary restraining order or for a preliminary injunction:

> "When ruling on a motion for [injunctive relief], a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (quoting *Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.*, 110 F.3d 318, 322 (6th Cir.1997) (citations omitted)). The court of appeals has further explained that

---

immediate relief requested from the Ohio Supreme Court. In essence, Plaintiff's counsel conceded that this action and the state court action are parallel, as that term is defined under the *Colorado River* abstention doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). The Court was somewhat inclined the revisit the abstention issue for further analysis under the *Moses H. Cone* factors, which were not reached in its decision denying the Commerce Defendants' motion to dismiss or stay based on abstention. (Doc. #17 at 4) ("First, [this Court] must decide whether the case at bar and the state court action are parallel, and then second, the Court must consider certain factors articulated in *Moses H. Cone*.") (citing *Crawley v. Hamilton County Commissioners*, 744 F.2d 28 (6th Cir. 1984)). However, because of the outcome of Plaintiff's motion for immediate injunctive relief, the Court has decided not to do so.

a district court should not consider the foregoing factors as prerequisites to be met; rather, these factors are to be balanced in a weighing of the equities involved. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

### III. Analysis

In Plaintiff's Motion for Injunctive Relief Against the County Defendants, Plaintiff argues that all four factors of the injunctive relief inquiry favor granting its motion. This Court disagrees.

**A. Likelihood of Success on the Merits**

The first factor this Court must consider in deciding whether to grant a temporary restraining order is whether Plaintiff has a strong likelihood of success on the merits of its clams for relief. Plaintiff alleges that the County Defendants violated Plaintiff's constitutional procedural due process rights. The Fourteenth Amendment to the United States Constitution prohibits states from depriving citizens of "life, liberty, or property" without "due process of law." U.S. Const. amend. XIV. "A two-step analysis guides [this Court's] evaluation of procedural due process claims." *Herrada v. City of Detroit*, 275 F.3d 553, 556 (6th Cir. 2001). First, the Court must "determine 'whether there exists a liberty interest or property interest which has been interfered with by the defendants.' " *Id.* (quoting *Jackson v. City of Columbus*, 194 F.3d 737, 749 (6th Cir. 1999)). "Second, if such a deprivation occurred, [this Court] must decide whether the procedures that accompanied the interference were constitutionally sufficient." *Id.* (citing *Buchanan v. Apfel*, 249 F.3d 485, 490 (6th Cir. 2001)).

Plaintiff argues that the County Defendants violated its constitutional due process rights in two ways. First, Plaintiff claims that the County Defendants deprived Plaintiff of a liberty

5

interest associated with the stigmatizing label of "lawbreaker," and second, that the County Defendants deprived Plaintiff of a "property interest in its ability to compete for public contracts." (Doc. # 4 at 14.)

**1. Does Plaintiff possess a liberty interest in competing for contracts without the stigmatizing label "lawbreaker"?**

It is not disputed that Plaintiff was disqualified from the bidding list for the Animal Shelter project based on the failure to meet one of the bid selection criteria set forth in the Board's resolution 421-02. Specifically, section 8.2.4.15 of the bid selection criteria requires a contractor to provide:

> Information that the Bidder has not been debarred from public contracts or found by the state (after all appeals) to have violated prevailing wage laws more than three times in a two-year period in the last ten years.

(Doc. # 2-2 at 2 of 29.)

The Board made a public records request to Commerce, asking for the past prevailing wage records of Plaintiff. The records received by the Board indicated that Plaintiff had, after all appeals, violated prevailing wage laws more than three times in a two-year period. Plaintiff argues that the County Defendants' decision finding that Plaintiff, after all appeals, violated prevailing wage laws more than three times in a two-year period "impugns the reputation of [Plaintiff] and effectively debars [Plaintiff] from government contracting in Franklin County." (Doc. # 4 at 11.) Plaintiff contends that because of this finding, the County "Defendants disqualified [Plaintiff]'s bid based upon charges of fraud and dishonesty." *Id.* at 13. Further, Plaintiff contends that its liberty interest was violated by the County Defendants' requirement that Plaintiff report in the future that it has been found to have violated state law, when Plaintiff maintains that it has not done so. These together, Plaintiff argues, attaches the label

6

"lawbreaker" to it and effectively eliminates Plaintiff from the field of competition for public contracts. Plaintiff asserts that the ability to compete for public contracts without being labeled a lawbreaker is a constitutionally protected liberty interest.

In opposition, the County Defendants argue that this alleged injury to reputation is not sufficient to establish a deprivation of due process. This Court agrees.

Alleged injury to reputation alone is not sufficient to establish a deprivation of due process. *Paul v. Davis*, 424 U.S. 693, 701 (1976). The Sixth Circuit recognized that the "Supreme Court has never held that 'the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment.' " *Ferencz v. Hairston*, 119 F.3d 1244, 1249 (6th Cir.1997) (quoting *Paul*, 424 U.S. at 706). Here, there was no loss of government employment, but rather a removal of Plaintiff from the bid list. As the *Ferencz* court stated, a contractor cannot claim "any 'right or status previously recognized by state law [that] was distinctly altered or extinguished' by removal of their names from the bid list." 119 F.3d at 1249 (quoting *Paul*, 424 U.S. at 711). The court held further that "the interest in reputation alone which the plaintiffs in this case seek to vindicate is 'quite different' from the liberty interest that the Due Process Clause protects." 119 F.3d at 1249 (quoting *Paul*, 424 U.S. at 711).

Plaintiff here, like the plaintiff in *Ferencz*, has not had any right or status recognized by state law extinguished. Contrary to Plaintiff's assertion, the County Defendants have not debarred Plaintiff from submitting bids for other public projects. Plaintiff has simply been removed from a bid list on a particular public project. Plaintiff was removed from the bid list for

7

failure to meet the bid selection criterion requiring compliance with Ohio's prevailing wage statute. Whether the failure was the result of intentional, fraudulent, or dishonest conduct or the result of an unintentional, honest miscalculation, is immaterial. In 2002, Franklin County adopted a resolution that set out specific bid selection criteria, one of which excludes any contractor who has not paid previous wages in accordance with state law. There is no dispute that this criterion has been applied to all bidders in a nondiscriminatory way. The decision as to whether the criterion at issue here, or any of the bid criteria, is appropriate, equitable, or has the ability to effectively disbar a contractor is not judicial but rather is one legislative in nature.

Further, despite Plaintiff's claim to the contrary, the County Defendants have not alleged or maintained that Plaintiff acted fraudulently or dishonestly. Plaintiff argument on this point is as follows: Plaintiff certified in its bid that it had never been found to have violated Ohio's prevailing wage laws. Thus, Plaintiff concludes, that when the County Defendants rejected Plaintiff's bid it found that this certification was false, and therefore, has labeled Plaintiff as dishonest. The Court is unpersuaded by Plaintiff's argument. The evidence shows that the County Defendants removed Plaintiff from the bidding pool based upon public records that evidenced that Plaintiff failed to pay employees pursuant to the requirements of Ohio's prevailing wage laws. Nothing in these defendants' actions reflect upon Plaintiff's integrity.

The cases upon which Plaintiff relies do nothing to alter this Court's conclusion. With regard to the Sixth Circuit case, *Transco Sec., Inc. v. Freeman*, the appellate court explained:

> While the deprivation of the right to bid on government contracts is not a property interest (procurement statutes are for the benefit of the government, not bidders), the bidder's liberty interest is affected when that denial is based on charges of fraud and dishonesty.

639 F.2d 318, 321 (6th Cir. 1981) (internal citations omitted); *see also Lasmer Indus., Inc. v.*

8

*Def. Supply Ctr. Columbus*, No. 2:08-cv-0286, 2008 U.S. Dist. LEXIS 51460 (S.D. Ohio June 13, 2008) (reputational liberty interest in government debarment for lack of business integrity or business honesty).  As stated *supra*, the rejection of Plaintiff's bid was not based upon fraud or dishonesty; neither was Plaintiff debarred from bidding on public projects.  Thus, these cases are inapposite.

The Court concludes that the County Defendants' rejection of Plaintiff's bid on the Animal Shelter contract based on accurate public records showing that Plaintiff violated, regardless of how inadvertent the violation may have been, prevailing wage laws more than three times in a two-year period is insufficient to invoke the guarantees of procedural due process.  Accordingly, there is not a strong likelihood that Plaintiff will succeed on its claim that it possessed a constitutional liberty interest in its reputation.

### 2.  Does Plaintiff possess a property interest in the ability to compete for public contracts?

During oral argument, Plaintiff appeared to have abandoned its argument related to its alleged violation of due process based upon a property interest in the ability to compete for public contracts, and was well advised to have done so.  In the event Plaintiff did not intend to forgo this claim, the Court will address it.

Plaintiff argues that it has a property interest in the ability to compete for public contracts and that the County Defendants have debarred Plaintiff from so competing.  To establish a protected property interest in a publicly bid contract, a plaintiff must show that it was either awarded the contract and then deprived of it, or that, under state law, the County had limited discretion, which it abused, in awarding the contract.  *Enertech Elec., Inc. v. Mahoning County Commr's*, 85 F.3d 257, 260 (6th Cir. 1996).  Plaintiff was not awarded the contract at issue and,

therefore, must establish that the County Defendants abused their discretion in rejecting Plaintiff's bid. The County Defendants argue that Plaintiff cannot make this showing. This Court agrees.

Property interests are created and defined by state law. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The seminal case on Ohio's competitive bidding laws was decided by the Court of Appeals for Clark County in *Altschul v. City of Springfield*, 48 Ohio App. 356 (Clark Cty. 1933). In *Altschul*, the court reviewed Ohio's competitive bidding statutes and held that the statutory provisions confer upon the awarding authorities a certain amount of discretion in determining which bidder is the lowest and best for a particular project.

> It must be conceded that when the statute provides for the acceptance of the lowest and best bid the city is not limited to an acceptance of merely the lowest dollar bid.
>
> The statutes of this state as to most public work provided some years ago for the acceptance of only the lowest bid. That was subsequently amended so as to read "lowest and best bid." This amendment clearly indicates that the Legislature recognized that an element other than the mere low dollar bid often enters into the letting of a contract. Hence the amendment providing that the contract should be let to the lowest and best bidder followed.
>
> This amendment, therefore, places in the hands of the city authorities the discretion of determining who under all the circumstances is the lowest and best bidder for the work in question.
>
> This discretion is not vested in the courts and the courts cannot interfere in the exercise of this discretion unless it clearly appears that the city authorities in whom such discretion has been vested are abusing the discretion so vested in them.

*Id.* at 362. *See also Blue Ridge Custodial Corp. v. Franklin County*, Case No. 2:04-CV-77, 2006 U.S. Dist. LEXIS 8515, at *11-12 (S.D. Ohio March 6, 2006) (citing this same language for the proposition that "courts in Ohio have concluded that a certain amount of discretion is vested to a

municipal authority in choosing a lowest and best bid for purposes of the award of a public contract").

The Ohio Supreme Court has held that the term "abuse of discretion" has a specific meaning with respect to review of the actions of public agencies in the award of public contracts.

> "The meaning of the term 'abuse of discretion' . . . connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude . . . ." *Steiner v. Custer* (1940), 137 Ohio St. 448, paragraph two of the syllabus; *Conner v. Conner* (1959), 170 Ohio St. 85; Rohde v. Farmer (1970), 23 Ohio St. 2d 82; and *State v. Adams* (1980), 62 Ohio St. 2d 151. "Arbitrary" means "without adequate determining principle; . . . not governed by any fixed rules or standard." Black's Law Dictionary (5 Ed.). "Unreasonable" means "irrational." *Id.*

*Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (Ohio 1981).

As *Altschul*, demonstrates, this Court cannot substitute its judgment for the judgment of the awarding authorities absent a showing of an abuse of discretion on the part of the awarding authorities. And, as *McGee* explains, errors of law or judgment do not constitute an abuse of discretion in this context and will not suffice to set aside the decision made by a public agency with respect to its competitive bidding process. Guided by these decisions, this Court must examine what actions on the part of the County Defendants may be said to constitute an abuse of discretion in violation of the competitive bidding statutes.

Ohio's prevailing wage statute, Ohio Revised Code Chapter 4115, distinguishes between intentional violations on the one hand, and underpayments based on "misinterpretation of statute, or an erroneous preparation of the payroll documents," or "unintentional underpayments" on the other. Ohio Rev. Code ¶ 4115.13(C). Every contractor convicted or adjudicated of intentional violations is debarred from all public contracting statewide for at least one year. *Id.* ¶ 4115.133(B). The Ohio Statute authorizes and requires Commerce to investigate complaints of

11

underpayments. *Id.* at ¶ 4115.13. Commerce's investigation results in a "recommendation" of whether there was an underpayment, and if so, whether there was an intentional violation. Plaintiff claims that a contractor may appeal a recommendation of an intentional violation to Commerce; however, a contractor may not appeal a recommendation of an unintentional underpayment.

As stated above, the regulation at issue is found in section 8.2.4.15 of the Board's resolution 421-02 as part of the Board's bid selection criteria:

> Information that the Bidder has not been debarred from public contracts or found by the state (after all appeals) to have violated prevailing wage laws more than three times in a two-year period in the last ten years.

(Doc. # 2-2 at 2 of 29.)

Plaintiff argues that the County Defendants abused their discretion by interpreting this language to apply to intentional violations as well as to unintentional underpayments. Plaintiff contends that the language and application of the Board's standard should be construed as only pertaining to "intentional" violations. The County Defendants argue that this interpretation of the provision is incorrect for two reasons, which the Court finds persuasive.

First, the County Defendants argue that a plain reading of the provision, giving meaning to all of its provisions, demonstrates that Plaintiff's interpretation incorrect. That is, to be entitled to a contract, bidders must certify that they have not "been debarred from public contracts" *or* have not been "found by the state (after all appeals) to have violated prevailing wage laws more than three times in a two-year period in the last ten years." *Id.*[2] (emphasis

---

[2]The Court notes that Plaintiff quoted this provision in its motion as follows:

Information that the Bidder has not been . . . found by the state (after all appeals)

12

added). The County Defendants argue further that, if Plaintiff's interpretation were to apply, the only language in the standard to have any meaning would be the first half relating to debarment. However, according to Ohio Revised Code 4115.133(B), if a contractor is found to have intentionally violated the prevailing wage laws, it would be debarred from all public contracts in the state. If the standard were so applied, its second half would have no meaning. Indeed, reading the standard that way would allow contractors more than three intentional violations in a two year period (which would not even be possible given their debarment after the first violation). The County Defendants conclude that this is an absurd result, and, indeed, it is.

Second, the County Defendants argue that Plaintiff's assertion that the language referring to "after all appeals" mandates that it only applies to intentional violations lacks merit as well. Specifically, these defendants contend that, while there may not be a formal appeal process set forth in the Revised Code regarding determinations made by Commerce, neither is there an enforceable obligation to pay on such determination. The obligation to pay arises only after the conclusion of all remedies available to the contractor subject to the determination. In this instance, the County Defendants maintain, Plaintiff chose to pay on Commerce's determination rather than exercise its due process rights to seek appropriate remedies with Commerce or pursue other relief that may be available to it. This is the finality that serves the purpose of the Board's qualitative criteria and gives full meaning to all its provisions. The County Defendants correctly note that their interpretation of the Board's bidding criteria has been specifically upheld by the

---

    to have violated prevailing wage laws more than three times in a two-year period
    in the last ten years.

(Doc. # 4 at 5.) Thus, Plaintiff removed from the provision: "debarred from public contracts or." This language, however, is important to the analysis before the Court.

10th District Court of Appeals in *State ex rel. Assoc. Builders & Contrs. of Central Ohio v. Franklin Cty. Bd. of Commrs.*, No. 08AP-301, 2008 Ohio App. LEXIS 2390 (Franklin Cty. Jun 13, 2008).

In *State ex rel. Assoc. Builders*, the Franklin County Court of Appeals considered the identical bid specification language at issue, and addressed an identical fact pattern wherein the Board rejected the bid of a contractor who had determinations issued against it by Commerce. While the violations were never determined to be intentional by the State of Ohio, or any other entity, the court upheld the Board's application of its bidding criteria in considering any violation to count.

Based on the foregoing, the Court concludes that the County Defendants' actions did not imply an unreasonable, arbitrary, or unconscionable attitude, *i.e.*, did not indicate an abuse of the discretion provided to them in the competitive bidding statutes when they rejected Plaintiff's bid. Consequently, Plaintiff has not established that it has a protected property interest in the Animal Shelter contract. Accordingly, there is not a strong likelihood that Plaintiff will succeed on its claim that it possessed a property interest in its ability to bid for the Animal Shelter contract.

**B. Irreparable Injury to Plaintiff**

Plaintiff correctly argues that the only remedy available to a disappointed bidder is to seek injunctive relief. *See Cementech Inc. v. City of Fairlawn*, 109 Ohio St.3d 475, 478 (Ohio 2006); *see also TP Mechanical Contrs., Inc. v. Franklin Cty. Bd. Of Comms*, 2008 Ohio App. LEXIS 5705 (Franklin Cty. Dec. 23, 2008). Plaintiff contends that, because of this, it is not inappropriate to stop construction on the Animal Shelter project. This Court, however, agrees with the County Defendants' argument in this regard. That is, any harm suffered by Plaintiff is

the result of its history of non-compliance with the State's prevailing wage laws and its failure to meet the bidding selection criteria, not a result of this Court's declination to issue emergency injunctive relief. It is, in effect, self-inflicted harm. In an equitable relief context, such as this stage of this case, this Court will not give much weight to self-inflicted harm, if any.

## C. Harm to Others

The Court must next determine whether issuance of the requested injunctive relief would substantially harm others. Here, the County Defendants have entered into a contract with another contractor to perform the electrical work on the Animal Shelter project. The subject work is on the critical path and the successful bidder has been issued a notice to proceed and has commenced some mobilization. Indeed, at oral argument Jess Howard Electric appeared and its counsel provided information that the work had began and was ongoing. Enjoining the work at this date would disrupt the construction schedule and would interfere with the contract rights of another contractor who is not a party to this action. This Court gives some weight to the argument that stopping the electrical work would, in all likelihood, affect all the contractors in the project by placing them in a "weight and see" position before they proceed with their phases of the project. Further, it would also subject the County Defendants to delay claims from those businesses that have been retained to work on the project. Moreover, the public at large will be deprived of the animal shelter for which their tax dollars paid.

The Ohio Supreme Court has held that the granting of an injunction should be done with caution, " 'especially in cases affecting a public interest where the Court is asked to interfere with or suspend the operation important works or control the action of another department or government.' " *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist*., 73 Ohio St.3d

590, 604 (1995) (quoting *Leaseway Distrib. Ctrs., Inc. v. Dept. of Adm. Svcs.*, 49 Ohio App.3d 99, 106 (Franklin Cty. 1988)). Consequently, the Court concludes that issuance of the requested injunctive relief has the potential to substantially harm others.

**D. Public Interest**

Last, the Court determines that the public interest would not be served by issuance of the requested injunction. As explained above, there is not a substantial likelihood that Plaintiff will succeed on the merits of its constitutional due process claims. Further, as the County Defendants point out, the purpose of the competitive bidding laws are twofold, to protect the interests of the public as well as the bidders involved in the bidding process. *See Cedar Bay Constr., Inc. v. Fremont*, 50 Ohio St.3d 19 (1990); *Hardrives Paving & Constr., Inc. v. Niles*, 99 Ohio App.3d 243 (Trumbull Cty. 1994). Here, the public would best be served by maintaining the status quo.

### III. Conclusion

Balancing the four injunctive relief factors in weighing the equities involved in the instant action, the Court concludes that emergency injunctive relief is not appropriate. Therefore, the Court **DENIES** Plaintiff's Motion for Injunctive Relief Against the County Defendants. (Doc. # 4.)

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE